IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:25-CV-313-BO-RN

| | |
|---|---|
| MIRIAM VIVIANA DEHAAN LEON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| ELMER GARCIA VALENTE, ) | |
| ) | |
| Respondent. ) | |

This matter comes before the Court on petitioner's motion for partial summary judgment. [DE 23]. Petitioner moves the Court to grant partial summary judgment as to her prima facie petition for return of her minor children based on the Hague Abduction Convention. Respondent has not filed a response, and the time for doing so has elapsed. Respondent instead filed a motion to dismiss, or in the alternative, a motion for summary judgment. [DE 26]. Petitioner has responded, and the time for reply has elapsed. An evidentiary hearing was held before the undersigned on July 30, 2025. In this posture, the motions are ripe for review. For the following reasons, petitioner's motion for partial summary judgment is granted and respondent's motion to dismiss or for summary judgment is denied.

## BACKGROUND

Petitioner is the mother of two girls initialed K.X.G.D. and R.G.D. [DE 6, p. 1]. K.X.G.D. is ten years old and R.G.D. is eight. [DE 23, p. 4]. Before coming to the United States, they had never left Mexico. [DE 6, p. 4]. Respondent, their father, "left Mexico after he received extortion demands and threats against himself and his family from a local organized crime ring." [DE 26, p. 2]. In 2019, the parties agreed that the girls would live with Ms. Carlos, their paternal grandmother

(respondent's mother) while petitioner worked during the week, and the girls would live with petitioner on the weekend. [DE 6, p. 5]; [DE 25, ¶ 5]. This arrangement changed in 2023 when a Mexican court granted petitioner temporary custody of the children and granted Ms. Carlos visitation. [DE 6, p. 6]; [DE 6-8]; [DE 25, ¶ 8]. However, petitioner alleges that Ms. Carlos never returned the children. [DE 6, p. 6]. Petitioner discovered that Ms. Carlos had unenrolled the children from school. *Id*; [DE 25, ¶ 9]. Around January 2024, petitioner learned that Ms. Carlos had taken the girls to the United States to live with respondent. [DE 6, p. 6–7]; [DE 25, ¶ 10]. The children had never traveled outside Mexico. [DE 25, ¶ 4]. Petitioner filed her petition on June 17, 2025.

## STANDARD

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect

the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted).

## DISCUSSION

The material facts as to petitioner's prima facie case are innocuous—the age of the girls, their country of residence, and their departure from Mexico with Ms. Carlos are undisputed. By failing to respond to petitioner's motion for summary judgment [DE 23], respondent admits petitioner's factual assertions for purposes of the motion. Even to the extent that respondent's motion to dismiss [DE 26] functions as a response, he either affirms plaintiff's facts or fails to dispute them. "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e). Having established that there is no dispute of facts material to petitioner's prima facie claim, the Court turns now to whether petitioner is entitled to a judgment as a matter of law.

## I. Hague Convention

The multinational Hague Abduction Convention, implemented by Congress through the 1980 International Child Abduction Remedies Act (ICARA), aims to deter parents from taking children across national boundaries to resolve their custody disputes in more sympathetic jurisdictions. *Alcala v. Hernandez*, 826 F.3d 161, 169 (4th Cir. 2016). Because K.X.G.D. and R.G.D. are under sixteen years old and both Mexico and the United States are signatories who had already enacted the Convention at the time of the abduction, ICARA applies to this case. To make out a prima facie petition for the return of a child under the Convention, petitioner must show by a preponderance of the evidence that "(1) the child was 'habitually resident' in the petitioner's

3

country of residence at the time of removal, (2) the removal was in breach of the petitioner's custody rights under the law of his home state, and (3) the petitioner had been exercising those rights at the time of removal." *Bader v. Kramer*, 484 F.3d 666, 668 (4th Cir. 2007). "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

If the petitioner proves the elements of the prima facie case for return, the court must order the child's return to her country of habitual residence before the abduction, unless the respondent makes out one of the few and narrow affirmative defenses. *Bader*, 484 F.3d at 668.

> Upon a showing of wrongful removal, return of the child is required unless the respondent establishes one of four defenses. Two of the defenses must be supported by clear and convincing evidence: (1) that return would expose the child to a "grave risk" of "physical or psychological harm or otherwise place [the child] in an intolerable situation" and (2) that return of the child would not be permitted by "fundamental principles of the United States relating to the protection of human rights and fundamental freedoms." The other two defenses may be supported by a preponderance of the evidence: (1) that the petition for return was not filed within one year of the removal and the child is now well-settled in another country, and (2) that the petitioner was not actually exercising his custodial rights at the time of the removal or had consented to or acquiesced in the removal.

*Id.* at 668–69 (cleaned up, internal citations omitted).

## II. Standing

Respondent's motion to dismiss raises the issue of standing [DE 26 p. 8], arguing that any injury caused to petitioner by the removal of her children from Mexico is not "fairly traceable" to respondent and citing *Davis v. Wells Fargo, U.S. Bank Nat'l Ass'n*, 824 F. 3d 333, 350 (3rd Cir. 2016). This creative argument seems to rely on the fact that Ms. Carlos, not respondent, was the one who removed the children from Mexico, so petitioner's injury is not fairly traceable to respondent. Although Ms. Carlos took the children from Mexico to the United States, they came

4

to reside with respondent. [DE 26, p. 4]. Petitioner's injury does not end with the removal of the children. The fact that respondent has retained the children is itself an injury attributable to him because he controls the children. *See id.* Furthermore, supposing Ms. Carlos had been named in this action rather than respondent, a different standing problem would arise, as Ms. Carlos would be unable to redress petitioner's injury, having handed the children off to respondent. In any event, the Fifth Circuit has examined what party should be named in a petition for return and determined that "the person with physical custody of the child must be a respondent[.]" *Sanchez v. R.G.L.*, 761 F.3d 495, 505 (5th Cir. 2014). It stands to reason that the person who controls the children should be named, and petitioner correctly named the children's physical custodian as respondent.

Respondent argues that the custody order cannot be asserted against him because he was not an adversarial party to that proceeding, and the extent of the custody rights conferred on petitioner were rights only against Ms. Carlos. [DE 26, p. 7–8]. Whether or not respondent had an opportunity to be heard at the custody proceeding, petitioner left the proceeding with custodial rights, and removing or retaining the children from petitioner's care prevented her from enjoying those custodial rights.

### III. Petitioner's Prima Facie Case

The children habitually resided in Mexico—they never left Mexico until Ms. Carlos took them to the United States. [DE 25, ¶ 4]. With that element satisfied, the questions remaining are whether their removal breached petitioner's custody rights, and whether petitioner was exercising those rights at the time of removal. *See Bader*, 484 F.3d at 668. To establish her custody rights, petitioner filed along with her petition a translation of the Mexican court order granting her temporary custody and granting Ms. Carlos visitation rights. [DE 6-8]. The translation is stamped

5

on each page with the name of an "expert translator authorized by the Supreme Court of Justice in Mexico City," and is hastily wet signed with a swoosh near each stamp. *Id.*

Respondent challenges the admissibility of this document based on Fed. R. Evid. 902(3), which details the certification requirements for admissibility of a foreign public document. [DE 26, p. 5]. Fed. R. Evid. 902(3) provides that the admissibility of a document "signed or attested by a person who is authorized by a foreign country's law to do so" is conditioned on "a final certification that certifies the genuineness of the signature and official position of the signer or attester[.]" The translation of the custody order is not accompanied by a certification. [DE 6-8].

The document is nevertheless admissible because of the relaxed authentication requirements in Hague abduction cases.

> With respect to any application to the United States Central Authority, or any petition to a court under section 9003 of this title, which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court.

22 U.S.C. § 9005. In any case, respondent challenges the admissibility of the translation provided, not the veracity of its contents, appearing to admit that the custody order granted petitioner temporary custody and granted Ms. Carlos visitation. [DE 26, p. 3].

*a. The Temporary Custody Order and* Patria Potestas *Rights*

The Convention provides that when the wrongful removal or retention of a child from her country of habitual residence violates "rights of custody," the remedy is return of the child. *Abbott v. Abbott*, 560 U.S. 1, 9 (2010). The Convention defines "rights of custody" to "include rights relating to the care of the person of the child and, in particular, the right to determine the child's

6

place of residence." *Id.* "The Convention also recognizes 'rights of *access*,' but offers no return remedy for a breach of those rights.[1] *Id.* (emphasis added).

Respondent, in support of his contention that a "temporary custody order" does not establish permanent custodial rights sufficient to invoke the Hague Convention [DE 26 p. 7], cites only one case, *Cantor v. Cohen*. 442 F.3d 196, 202 (4th Cir. 2006). The trial court that handled *Cantor* certified, pursuant to Fed. R. Civ. P. 54(b), that it was dismissing the petitioner's *access* claims for lack of jurisdiction. *Id.* at 189–199. The propriety of that dismissal of *access* claims was the only question on appeal. *Id.* The Court of Appeals in *Cantor* did not consider whether the applicable temporary custody orders granted rights of *custody*, which is the question in the instant case. *See id.* Besides, the custody order clearly granting the petitioner "temporary custody" in *Cantor* was not even in effect at the time the respondent in that case removed and retained the children from the care of the petitioner. *Id.* at 197–198. The relevant custody order in effect at that time granted something resembling temporary custody to the *respondent*. *Id.*

The temporary custody order in the instant case granted petitioner rights of custody within the meaning of the Convention. The order explains the Mexican legal principle that "the duty to help and . . . to provide food, as well as the duty and right to exercise legal custody and guardianship" falls on "first-degree ascendants, meaning the father or mother, so that in their absence it generally corresponds to second-degree direct ascendants, meaning grandparents in both lines[.]" [DE 6-8]. The translated order plainly reserves "legal custody and guardianship" to petitioner. Furthermore, this basis for granting petitioner custody, rather than Ms. Carlos, explains that petitioner will have "rights relating to the care of the person of the child[.]" *See Abbott* 560

---

[1] Under ICARA, "the term 'rights of access' means visitation rights." 22 U.S.C. § 9002(7)

U.S. 1 at 9. With respondent absent from Mexico, petitioner was the only parent present and able to take custody, care, and guardianship of the children.

Petitioner's assertion that the removal of K.X.G.D. and R.G.D. constituted a breach of her custodial rights could be supported solely by the temporary custody order. Nevertheless, after petitioner challenged the admissibility and effect of the temporary custody order, respondent noted that custodial rights also inure from the default doctrine of *patria potestas*, sometimes called *patria potestad*.

> *Patria potestas* is a concept derived from the Roman civil law tradition; literally, the Latin words mean "the power of the father." Historically, the power of the father over his children was absolute, both in scope and to the exclusion of others. Patricia Begné, *Parental Authority and Child Custody in Mexico,* 39 Fam. L.Q. 527, 529 (2005). Under Roman and German law, *patria potestas* permitted a father to discipline his children in any way, up to and including by death; that power endured throughout the father's life. *Id.* Mexico's codes of 1870 and 1884 conveyed *patria potestas* first to the father of a child and only secondarily to the mother. *Id.* It was only in 1928 that the Civil Code began the process of eliminating its gender bias. *Id.* Today, *patria potestas* is based on the central values of "fairness and reciprocity"; it is a gender-neutral legal regime that regulates the relationship between parents (or parent-like figures) and their children. *Id.* at 530.

*Garcia v. Pinelo*, 808 F.3d 1158, 1164 (7th Cir. 2015).[2] The Seventh Circuit has recognized *patria potestas* as a "right of custody" within the meaning of the Convention.[3] *Id.* Here, petitioner and respondent each began with natural *patria potestas* rights as the parents of K.X.G.D. and R.G.D. The next question is whether the custody order overtook that default doctrine.

The Ninth Circuit has held when a custody order clearly delineates a parent's rights of custody or access, or where it strips the parent of custody rights, *patria potestas* no longer confers

---

[2] *Garcia v. Pinelo*, 808 F.3d 1158, concerned the law of Nuevo Leon. However, "[t]he Mexican Federal Civil Code is currently in force throughout Mexico and, consequently, serves as a model for the state civil codes in the areas of parental authority and custody." Patricia Begné, *Parental Authority and Child Custody in Mexico*, 39 Fam. L.Q. 527, 527 (2005).

[3] The First, Second, and Ninth Circuits have also recognized that *patria potestas,* when not superseded by custody agreement or court order, confers custodial rights within the meaning of the Convention. *See, respectively, Whallon v. Lynn*, 230 F.3d 450, 459 (1st Cir. 2000); *Mota v. Castillo*, 692 F.3d 108, 117 (2d Cir. 2012); *Gonzalez v. Gutierrez*, 311 F.3d 942, 954 (9th Cir. 2002), abrogated on other grounds by *Abbott v. Abbott*, 560 U.S. 1 (2010).

8

custodial rights on a parent. *See Gonzalez v. Gutierrez*, 311 F.3d 942, 954 (9th Cir. 2002) (abrogated on other grounds by *Abbott v. Abbott*, 560 U.S. 1 (2010)). Essentially, where a formal custody agreement or court order defines the scope of parental authority, the default doctrine may be eclipsed. *See id.*

> In cases where the person holding parental authority dies or is otherwise unable to fulfill his duties, Mexican law expressly states who is to assume parental authority. *Patria potestad* is linked to, and inherent in, the person possessing particular qualities and conditions. It is the family judge (*Juez de lo Familiar*) who has authority to confer parental authority.

Patricia Begné, *Parental Authority and Child Custody in Mexico*, 39 Fam. L.Q. 527, 530 (2005).

The custody order at issue, however, does not appear to eclipse petitioner's natural rights. The translated custody order refers to the "Law on the Rights of Children and Adolescents of the State of Mexico" as stating, in essence, that "parents will be those exercising legal custody over minors and based on that, they will hold custody and guardianship, so that in their absence, grandparents and close relatives will be custodians." [DE 6-8]. Given that the Mexican court's reasoning tends to embody the principles of *patria potestas*—giving parents first rights over their children—the custody order does not appear to strip petitioner of her *patria potestas* rights but rather upholds them as against Ms. Carlos. Because the custody order expressly granted petitioner—and no one else—custody of the children, and granted Ms. Carlos mere visitation, petitioner had rights of custody within the meaning of the Convention.

*b. Petitioner Actually Exercised Her Custodial Rights at the Time of Removal*

The Fourth Circuit adopted the "nearly-universal approach taken by courts faced with the question of the exercise of custody rights," and will "liberally find 'exercise' whenever a parent with de jure custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." *Bader*, 484 F.3d at 671 (citing *Friedrich v. Friedrich*, 78 F.3d 1060, 1065 (6th Cir. 1996)).

9

Petitioner claims she remained in contact with the children through text messages and continued to attempt to text them after their removal but received no response. "Additionally, she made multiple attempts to go and retrieve her children from the paternal grandmother, but to no avail." [DE 27, p. 5]. Respondent asserts that petitioner "managed an occasional visit with the children when her schedule permitted, but this too did not work out." [DE 26, p. 3]. Respondent's factual claims regarding petitioner's exercise of custodial rights end there. Accordingly, because the parties agree that respondent made some effort to maintain regular contact with the children, the Court determines that petitioner exercised her custodial rights at the time of removal and has otherwise established her prima facie case for return of the children. Accordingly, her motion for partial summary judgment [DE 23] is granted.

## IV. Respondent's Affirmative Defenses

Respondent's motion to dismiss, or in the alternative for summary judgment [DE 26] asserts respondent's affirmative defenses. Fed. R. Civ. P. 56(c) provides,

> (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Petitioner has objected that respondent "provides unsworn, unverified allegations not in evidence." Respondent, in support of his motion for summary judgment regarding his affirmative defenses, does not cite sufficient material in the record. The Court denies respondent's motion for summary judgment on this basis, because the record contains insufficient evidence with which to determine the viability of respondent's affirmative defenses.

10

## CONCLUSION

For the foregoing reasons, petitioner's motion for partial summary judgment [DE 23] is GRANTED and her prima facie case is established. Respondent's motion to dismiss [DE 26] is DENIED, and respondent's motion in the alternative for summary judgment [DE 26] is DENIED WITHOUT PREJUDICE. Respondent's motion to continue [DE 21] is DENIED as MOOT. The Court will determine whether respondent can establish any affirmative defenses by considering a renewed motion for summary judgment, which he may file within fourteen (14) days of the date of entry of this order and in compliance with Local Civil Rule 56.1. Petitioner may file her response and opposing statement of material facts within fourteen (14) days of the filing of the motion for summary judgment. Respondent may file a reply within seven (7) days of the filing of petitioner's response. Should the Court determine that the evidentiary record is sufficient, it will decide the issue without conducting any further hearings.

SO ORDERED, this **30** day of October 2025.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE